## HUNT v. P. J. MORAN, Contractor, Inc.

### No. 2739.   Decided July 3, 1915.   (150 Pac. 953.)

1. APPEAL AND ERROR—REVIEW—VERDICT.  A verdict on conflicting evidence will not be disturbed on appeal.  (Page 391.)

2. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE.  In personal injury action by servant, question of the master's negligence *held* for the jury.  (Page 392.)

3. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.  The question of a servant's contributory negligence *held* for the jury.  (Page 392.)

4. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMPTION OF RISK.  A minor servant who was in charge of a derrick which was operated by a hand crank and was equipped with an iron dog to hold the load in place after it had been elevated did not as a matter of law, assume the risk of injury from a defective dog which the master had the day before placed on the derrick.  (Page 392.)

5. TRIAL—REVIEW—HARMLESS ERROR.  The complaint of a servant injured when the dog with which a derrick was equipped failed to catch did not aver that the master was negligent in failing to inspect.  On cross-examination of the servant much was said about the duty of inspection.  The court charged that it was the master's duty to exercise reasonable care to provide safe machinery, and that the servant was not required to make a critical inspection of the appliances, but it was the duty of the master, who was required not only to furnish reasonably safe and suitable tools and machinery, but to exercise a continued supervision over them by careful inspection.  *Held*, that the instruction, while without the issues, was not prejudicial; the whole charge showing that the master was not bound to make continuous inspections.  (Page 395.)

6. TRIAL—INSTRUCTIONS—REFUSAL.  The refusal of requests covered by the charges given is not error.  (Page 397.)

Appeal from District Court, Third District; Hon. *F. G. Loofbourow*, Judge.

Action by Bennie F. Hunt against P. J. Moran, Contractor, Incorporated, a corporation.

Judgment for plaintiff.  Defendant appeals.

AFFIRMED.

*King & Nibley* and *P. T. Farnsworth, Jr.,* for appellant.

*Cheney, Jensen & Holman* and *W. R. Hutchinson,* for respondent.

### APPELLANT'S POINTS.

If respondent could not tell what the negligence of appellant was we respectfully contend that the trial court should not have permitted the case to go to the jury.  (*Richards* v. *Steam Laundry,* 32 Utah 423.)  In *Fritz* v. *Electric Light Co.,* 18 Utah 493, the court says: ''Absolute safety is unattainable, and employers are not insurers.  They are liable for the consequences not of danger but of negligence, and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business.  No man is held to a higher degree of skill than the fair average of his trade or profession, and the standard of due care is the conduct of the average, prudent man.''  (Bailey on Master and Servant, section 259, page 575.)  In *Brossman* v. *Machine Works,* 83 Northeastern 936, the Court says, ''No duty exists upon the master to inspect common tools in every day use, the fitness of which the employe may be supposed a competent judge.''  (Bailey on Master and Servant, section 251.)  It appears that the respondent was thoroughly acquainted with the risk to which he was subjected, knew and appreciated the danger, and the court should have held as a matter of law that the risk was assumed by him.  (*Berlin* v. *Mershon & Co.,* 132 Mich. 183; *Swenson* v. *Mfg. Co.,* 98 Northwestern 645; *Cowett* v. *Wollen Co.,* 97 Maine 543; *Murphy* v. *Eng. Co.,* 57 Atlantic 444; *Langlois* v. *Worsted Mills,* 57 Atlantic 910;; *Upthegrove* v. *Coal Co.,* 118 Wis.  673; *Pulos* v. *Railway Co.,* 37 Utah 238; *Monte* v. *Paper Mills,* 111 Wis., 1114.)  Respondent adopted an unsafe and improper method of doing the work.  A person is bound to use his senses and cannot plead ignorance of the ordinary laws of nature, and shut his eyes

to danger, without taking the consequences. If a servant of his own volition chooses to take an unsafe method of doing his work, he is guilty of contributory negligence which will bar his recovery. (*Cowett* v. *Woolen Mills,* 97 Maine 543, 26 Cyc. 1249, 26 Cyc. 1257; *Montgomery Coal Co.* v. *Barringer,* 218 Ill. 332.)

RESPONDENT'S POINTS.

The law does not require of a servant, facing an emergency through the master's negligence, that nice precision of judgment in the selection of ways and means to accomplish his task which is ordinarily required where no such emergency exists. Under the circumstances presented in this case, certainly' the question of contributory negligence was for the jury. (La Batt Master and Servant, Vol. 3, secs. 1235 and 1244; *Smith* v. *Spokane Falls and N. R. Y. Co.,* 100 Pac. 747; *Colorado Midland R. R.* v. *Brady,* 101 Pac. 62; *Maryland Steel Co.* v. *Marney,* 42 L. R. R. 842; *Vota* v. *Ohio Copper Co.,* 42 Utah 129, 129 Pac. 349; *Newton* v. *O. S. L. R. R.,* 43 Utah 219, 134 Pac. 567; *Schall* v. *Cole,* 107 Pa. 1; *Producers' Oil Co.* v. *Bauer,* 120 S. W. 1023.)

FRICK, J.

The plaintiff, a minor, sued the defendant to recover damages for personal injuries which he alleged he sustained while in the employ of the defendant through the latter's negligence. The plaintiff, after alleging that he was employed as a "derrick man" and was engaged in hoisting stones with a derrick on a certain day for a certain building then being constructed by the defendant as contractor, alleged that said defendant "negligently failed to provide safe and suitable appliances for stopping, locking or controlling the said derrick in the operation of which plaintiff was employed, and negligently failed to provide a safe and suitable dog or clutch to lock the machinery of said derrick, and to hold the loads hoisted by the same in position after hoisting, but, instead, provided a certain improperly and defectively shaped clutch or dog which was insecurely fastened on said derrick, and which dog or clutch was insufficient and unsuitable for the

purpose for which it was designed and used." Plaintiff, in substance, further alleged that by reason of the insufficiency of said dog it failed to hold at rest a certain cogwheel called the "fall wheel" on said derrick while said derrick was being used to hoist a certain stone which was then to be laid in the building by the workmen constructing the same, and which stone, by reason of the insufficiency of said dog, began to fall; that in endeavoring to stop said wheel and to prevent said stone from falling and from endangering the lives of the workmen who were working underneath said stone, the plaintiff, in attempting to throw said dog into position to stop said fall wheel, had his hand in some manner forced into the cogs of said wheel, and by reason thereof was severely injured. The defendant denied all acts or omissions of negligence, and pleaded contributory negligence, assumption of risk, and that the injury was caused through the negligence of fellow servants. The defense of fellow servants, it seems, was afterwards eliminated from the case. A trial to a jury resulted in a verdict for the plaintiff. The court entered judgment, and, after being denied a new trial, the defendant appealed.

The principal error assigned is that the court erred in denying appellant's motion for nonsuit, which was based on substantially the following grounds: (1) That plaintiff failed to prove any negligence respecting the matters alleged in his complaint, or any of them; (2) that, if there was    1 any negligence shown, such negligence was not the proximate cause of the injury complained of; (3) that the injury was the result of an assumed risk; and (4) that the respondent was guilty of contributory negligence as a matter of law. Appellant's counsel, in referring to the evidence in their brief, say:

"As to the manner in which the accident occurred, there was a decided conflict in the testimony."

It is now well settled, in this jurisdiction at least, that where the evidence is in conflict, it ordinarily is the exclusive province of the jury to determine whether they will accept plaintiff's or defendant's version of the transaction in question, and in such event, if, after examining the evidence, we

find that there ·is some substantial evidence in support of every essential element which is necessary to entitle the plaintiff to recover, both our duty and our power end so far as the facts are concerned.

The evidence produced by the plaintiff, briefly stated, is to the effect that at the time of the accident he was twenty years of age; that he had been working for the defendant for about two months, and for approximately three weeks immediately preceding the accident was em- **2, 3, 4** ployed in operating a derrick in connection with a fellow workman; that said derrick was used to hoist the cut stones that were to be laid in the walls by the masons in constructing the building aforesaid; that the derrick consisted of an upright frame, to which was attached what is called a boom which turned on a pivot, and which was used to hoist the stones and to swing them to the place where desired; that on the uprights of the derrick were fastened two drums around which the cables were wound that were used in hoisting the stones; that these drums were revolved, and the cables were wound thereon by means of hand cranks which were attached to the drums by an iron shaft, and the power from the crank shaft was transmitted to the drums by means of two cogwheels, the larger one of which was from fourteen to eighteen inches in diameter, and the smaller one four or five inches; that in order to hold the stone in place after it was hosited from the ground an iron dog was attached to one of the uprights of the derrick. One end of this dog, when "flipped" over, as the witnesses put it, fell onto or between the cogs on the large wheel to keep the drums from revolving and thus to hold both the cables and stone at rest. On the day preceding the accident the dog that was then in use no longer responded to what was required of it, and the blacksmith employed by the defendant to make repairs made a new dog and attached it to the upright of the derrick in place of the old dog. The dog was attached to the upright by passing a bolt through the eye on the dog, and which bolt was fastened into one of the uprights of the derrick, and on the end of which bolt was a nut to hold the dog in place. The new dog, after it had been attached to the upright, was in use for about

thirty minutes on the evening preceding the accident, and for about two and one-half hours before the accident on the day it occurred. The plaintiff admits that he saw the blacksmith attach the new dog; that it seemed all right, and that it worked all right so far as he saw or knew; that on the morning of the accident, and before it occurred, he operated the hand crank and had hoisted seven stones, and the dog seemed to work all right; that after hoisting the last stone to the proper height he "flipped" the dog over and engaged the loose end thereof between the cogs in the large wheel, and then, as was usual and customary, removed his hand crank from the drum shaft; that immediately after he had done so the dog disengaged itself from the cogs, and the drum began to turn, and the stone to descend; that in order to prevent injury to the men who were then underneath the stone plaintiff again flipped the dog over in order to insert the end thereof between the cogs, and thus arrest the drum from revolving and the stone from descending, which it was rapidly doing; that the dog for some reason did not arrest the wheel, and the plaintiff again seized the dog with his left hand and attempted to engage it between the cogs, and in doing so his fingers were caught somehow in the cogwheel, and his hand or some of his fingers were severely injured. The whole accident happened very quickly, and the plaintiff at the time was also watching the stone which was descending upon the men beneath it, and for that reason was not able to state just how his hand was caught in the cogwheel. He and other witnesses testified that the new dog was placed rather loosely on the bolt in the upright, that is, that the eye of the dog was given lateral play of about three-fourths of an inch, which was too much, and that the end of the dog which was to fall and engage itself between the cogs was not properly fashioned to accomplish that result. Those defects the plaintiff, however, testified he did not discover or know of until immediately after the accident, when the dog was more particularly examined. It is contended that by reason of the lateral play that was allowed the dog shifted sideways, and thus did not properly or squarely connect with the cogs in the wheel, which were only three-fourths of an inch wide, and for the reason

that the lower end of the dog was not properly fashioned it did not arrest and hold the cogwheel aforesaid. While, perhaps, the foregoing evidence, in the minds of some men, might be deemed insufficient to establish negligence on the part of the master, upon the other hand, in the minds of others it might be deemed quite sufficient to do so. The facts, in our opinion, are not such that all reasonable minds should arrive at but one conclusion, and the question, therefore of whether appellant was negligent was for the jury. The same is true with regard to the claim of contributory negligence on the part of respondent. Nor do we think that, in view of the facts and circumstances, we should hold that the young man assumed the risk. Can it be reasonably contended that under all the circumstances we ought to say that he assumed all the risks incident to the operation of the machinery of the derrick, including the risk that might arise from an improperly fashioned dog or from an improper or insecure attachment thereof to the derrick frame? We think not. The duty to provide a proper dog and to attach the same properly to the derrick devolved upon the master, and not upon the servant. True, the servant assumed the risk of defects that were open to and appreciated by him, but we cannot say, as a matter of law, that the respondent, under all the circumstances of this case, either did or should have appreciated the risk of being injured. It seems he acted, and was required to act, hastily in order to prevent, as he thought, injury to the men or some of them who worked beneath the descending stone. It was for the jury to say, therefore, whether under all the circumstances, he fully sensed and appreciated the risk or danger he was exposing himself to in doing what he did. The same may be said regarding the alleged contributory negligence on his part in so far as the circumstances just detailed apply to that defense. While it is true that all those questions, namely, appellant's negligence, respondent's contributory negligence, and his assumption of the risk, which latter, under the circumstances, is, perhaps, the most important one here, are all close and in the minds of some may be doubtful, yet, for that reason, if for no other, they were for the jury. We, in common with other courts, have often held

that, where these questions are shrouded in doubt, they are always for the jury. It is only in cases where it is clear that there is no negligence upon the part of the master, or that there is contributory negligence on the part of the servant, or that he under all the circumstances assumed the risk in question, that we can interfere with a finding or verdict in favor of the plaintiff as a matter of law. To interfere in doubtful cases is to encroach upon the province or functions of the jury, which we have no right to do. The foregoing propositions have so often been passed upon, and the decisions upon them are so numerous, that we deem it wholly unnecessary to refer the reader to any of them. He may find many of them by the slightest effort. In view of what has been said, therefore, the court committed no error in denying the motion for nonsuit.

This brings us to the exceptions to the court's charge to the jury. The appellant excepted to the italicized portions of the following instructions:

"*The duty of a master toward a servant in his employ is to exercise reasonable and ordinary care and skill to provide safe machinery and appliances for carrying on the business in which he employs the servant,* and in keeping such machinery and appliances in safe condition for such use, including the duty of making inspections, tests and repairs at proper intervals while the work progresses."

And further:

"An employee is required to observe and avoid all known perils, or conditions such as would, upon ordinarily careful observation, convince an employee of ordinary intelligence and prudence, of danger, even though they may arise from a defect in the machinery or appliance which he is using; *but he is not bound to search for defects, or to make a critical inspection of the appliances which are provided for his use. These are the duties of the employer, who is required not only to furnish reasonable, safe, and suitable tools and machinery, but to exercise such a continuing supervision over them by such reasonable, careful and skillful inspection and repairs as will keep the appliances which the employee is required to use in*

*such a condition as not to expose him to extraordinary danger."*

Counsel now urge that the portions· of the charge we have italicized are outside the issues, and hence were improper. In that connection it is contended that no issue was raised by the pleadings that appellant was required either to inspect the machinery on the derrick, or that there was a failure to do so. It is true that the respondent in his complaint did not allege that appellant had failed in that regard, nor that such failure, if it· in fact existed, in any way contributed to the accident and consequent injury complained of. During the trial, however, and especially on appellant's cross-examination, much was said about those matters, and the court, for that reason, no doubt, was induced to charge the jury as it did upon that subject. As a general rule, the court should confine the instructions to the jury to the issues presented by the pleadings, and to depart from that rule may not only be erroneous, but it may, under certain circumstances, constitute prejudicial error. Whether the latter is the case, however, depends upon the evidence produced by the parties, as well as upon the particular circumstances of each case. We think that, inasmuch as both parties went into those matters on the trial of the case, and especially since the appellant did so very fully, that the matters excepted to did not and could not have misled the jury to appellant's prejudice. While the statement made by the court that it is the duty of the master "to exercise a continuing supervision over them," that is, over the tools, appliances and machinery furnished by the master, when applied to the facts of this case, is somewhat strong, yet, in view of the whole charge, when considered in the light of the evidence, we are constrained to hold that the jury were not misled thereby. We think what the court meant by the term "continuing supervision" was not that the master was compelled to maintain a watch or supervision constantly, that is, at each moment or even hour of time, but, by keeping in view all that was said by the court, what was meant was that a reasonable supervision, that is, an examination or inspection, at reasonable intervals of time only was required. If such a construction is permissible, and we think

it is—indeed, we think it is the only reasonable one under all the circumstances—then what the court said was not misstating the master's duty. We are of the opinion, therefore, that in view of all the evidence and the whole of the charge we are not authorized to interfere with the judgment for the reason last stated.

Nor was appellant prejudiced by the court's refusal to charge as requested. Really no request was refused which covered any feature or phase of the case not sufficiently covered by the court's charge. Indeed, every phase of the case was fully covered by the court's charge, and, that being so, it would have subserved no good purpose to have given additional requests upon the subjects already covered.

For the reasons stated, the judgment is affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.